UPDIKE, KELLY & SPELLACY, P.C.
RICHARD S. ORDER [Pro hac vice pending]
rorder@uks.com
ADAM B. MARKS [Pro hac vice pending]
amarks@uks.com
100 Pearl Street, P.O. Box 231277
Hartford, CT 06123-1277
Telephone:  860-548-2600
Facsimile:   860-548-2680

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
KENNETH A. O'BRIEN, JR., Cal. Bar No. 160171
kobrien@sheppardmullin.com
LAURA A. ALEXANDER, Cal. Bar No. 313212
lalexander@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Plaintiff, INTELICLEAR, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| INTELICLEAR, LLC., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>ETC GLOBAL HOLDINGS, INC., <br><br>　　　　Defendant. | Case No. <br><br>**COMPLAINT FOR:** <br><br>1. **MISAPPROPRIATION UNDER DEFEND TRADE SECRETS ACT;** <br>2. **MISAPPROPRIATION UNDER CUTSA;** <br>3. **UNFAIR COMPETITION** <br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff InteliClear, LLC ("InteliClear"), as and for its Complaint against defendant ETC Global Holdings, Inc. ("ETC"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) on the grounds that this is a civil action arising under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

2. This Court has subject matter jurisdiction over all state law claims under 28 U.S.C. §§ 1332(a) and 1367(a) on the grounds that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states and on the grounds that the state law claims are so related to the claim under the Defend Trade Secrets Act that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over ETC on the grounds that its principal place of business is located in this district.

4. Venue is proper in this district because ETC resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

5. Plaintiff InteliClear is a limited liability company organized under the laws of Connecticut with a principal place of business in Edison, New Jersey. The members of InteliClear are A. Martinho Barretto, who is a citizen of New Jersey, Guy T. Powell, who is a citizen of New York, and John Paul DeVito, who is a citizen of New York.

6. Defendant ETC is a Delaware corporation with a principal place of business in Los Angeles, California.

//
//
//

# FACTS COMMON TO ALL CLAIMS

## A. Software License Agreement

7. Since it began operating more than a decade ago, InteliClear's primary business has been the design, development, sale, license, and support of an electronic system designed to manage stock brokerage firm accounting, securities clearance, and securities settlement services.

8. On January 9, 2008, InteliClear entered into a Software License Agreement effective January 1, 2008 (the "License Agreement") with ETC's predecessor, Electronic Transaction Clearing, Inc. In the License Agreement, InteliClear is referred to as "IC." In an Amendment entered into on or about September 12, 2012, Electronic Transaction Clearing, Inc.'s rights, duties, and obligations under the License Agreement were assigned and delegated to ETC. The Amendment also increased the fees under the License Agreement to $45,000 per month.

9. ETC is a broker-dealer of securities registered with the Financial Industry Regulatory Authority ("FINRA") and United States Securities and Exchange Commission ("SEC"). Under the License Agreement, InteliClear licensed to ETC an electronic system for, among other things, the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, which include direct customers and other broker-dealers for which ETC serves as a correspondent clearing broker. ETC used InteliClear's system to track, compile, and report data concerning stock and options trades made by ETC and its customers, which are located in various states and foreign countries, and on stock exchanges across the country. InteliClear's system provided ETC back office operational functionality, products, and services, including purchase and sales, cashiering, accounting, regulatory, margin, master tables, and all processing required for a self-clearing and correspondent clearing

firm to operate efficiently and comply with the FINRA and SEC guidelines and regulations.

10. In Section 1(j) of the License Agreement, ETC acknowledged and agreed that:

> all information of any kind IC [InteliClear] has supplied or provided to ETC in connection with the License including but not limited to the SOFTWARE, shall be exclusive, confidential, proprietary and copyrighted property of IC and as such constitutes IC's Proprietary Information (the "Proprietary Information"). ETC shall treat such Proprietary Information with the degree of care normally used to protect ETC's own confidential and proprietary information. During and after the term of this Agreement, ETC agrees to maintain the Proprietary Information in confidence and shall refrain from disclosure thereof to third parties and shall use the Proprietary Information solely in connection with use and application of the License and for no other use without the prior written consent of IC.

11. The system that InteliClear licensed to ETC took InteliClear two years to design and develop. For ten years, InteliClear's system enabled ETC to track many types of information concerning securities transactions, including (a) the customer; (b) date, time, stock traded, number of shares and dollar value, profit, loss, and fees of each trade; (c) cost basis calculations and tax related information; (d) dividends; (e) corporate actions and reorganizations of securities impacting customer holdings; (f) clearance, settlement, and reconciliation for the proper recordkeeping of customer transactions, positions, and securities-related activities in relation to self-regulatory organizations, depositories, and utilities that constitute the infrastructure of the securities industry; (g) margining of customer portfolios to allow for the utilization of assets in the acquisition of additional assets; (h) tabulation of regulatory reports; and (i) archiving and retrieval of historical transactional information.

12. While other companies offer products that track similar information, the InteliClear system's unique design and concepts and the unique software, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which the InteliClear system's components interrelate and process data (collectively, the "InteliClear System") are InteliClear's intellectual property, confidential and proprietary information, and trade secrets that InteliClear has taken reasonable measures to protect and keep secret (*e.g.*, by Section 1(j) of the License Agreement quoted above and in similar license agreements with other customers) and that have independent economic value from not being generally known to or ascertainable by someone other than a licensor of the InteliClear System.

### B. Termination of the License Agreement

13. By letter dated November 20, 2017, ETC provided to InteliClear notice of termination of the License Agreement, effective at the end of the then current term, the last day of which was February 28, 2018. In that letter, ETC described its work plan to "cease use of and remove the InteliClear system from its operating environment . . . ." In particular, ETC committed to "remove the InteliClear database from all systems" by February 26, 2018.

14. By letter dated March 5, 2018, ETC certified to InteliClear that:
- All usage of the InteliClear system has been discontinued
- All instances of the InteliClear databases have been removed from all Company servers
- All instances of the InteliClear front-end GUI software have been removed from all Company servers
- Any and all back-up copies of the InteliClear system software have been destroyed
- Any and all system documentation, including data structures, specifications, system code and derivative works have been destroyed

### C. ETC's Misappropriation of InteliClear's Trade Secrets

15. Since termination of the License Agreement, ETC has continued to track securities trading but has done so on a system that it claims it developed and that it claims is not derived from the InteliClear System.

16. Despite and contrary to ETC's certifications, however, there are several grounds for concluding that ETC improperly copied, lifted, or otherwise misappropriated InteliClear's intellectual property, confidential and proprietary information, and trade secrets by developing a system derived in material part from the InteliClear System.

17. InteliClear learned from a former ETC employee that prior to giving notice of termination of the License Agreement, ETC started its efforts to build a replacement system, not from scratch but rather based on and derived from the InteliClear System as a guide and model.

18. In cooperating with ETC during the transition period in the last month of the License Agreement in February 2018, InteliClear noticed that certain of the InteliClear System's unique features appeared in the system that ETC would be using to replace the InteliClear System.

19. At various times, InteliClear has heard that ETC was offering its system for sale to others.

20. As a result, InteliClear contacted ETC in April 2018, explained its suspicions that ETC had improperly used the InteliClear System to build its replacement system, and demanded that ETC cease using its replacement system and trying to sell its replacement system. InteliClear also demanded ETC permit a computer technology and forensic expert hired by InteliClear access to ETC's system to compare it to the InteliClear System.

21. After months of negotiations, ETC finally agreed to give InteliClear's expert, Capsicum Group, LLC ("Capsicum"), access to ETC's system pursuant to a Protocol agreed to by the parties in August 2018.

22. In preparation for Capsicum's comparison of ETC's system to the InteliClear System, InteliClear provided to Capsicum certain features of the InteliClear System that it believes are unique and that Capsicum should search for in ETC's system.

23. On November 2, 2018, Capsicum issued its Summary Report, which concluded on page 4 that:

> Capsicum identified distinct similarities/overlaps between the ETC and InteliClear databases. These include tables with nearly identical field names, field names that appear to have the same business definitions, multiple similar or identical combinations of fields, and similar fields within the databases. Both ETC and InteliClear tend to use a combination of fields rather than unique IDs as a primary key. The ETC stored procedures . . . indicate a comment-history that shows ETC's database was developed over a two-year period while the License Agreement was still in effect and incorporated the IP of InteliClear.
>
> Based on its research and findings, Capsicum believes that ETC built its source code using InteliClear IP.

24. Two of Capsicum's findings illustrate how ETC improperly used the logic and database architecture contained in the InteliClear System to create its own system. First, ETC used a combination of fields to perform joins, which are instructions to combine data from two entities. Using a combination of fields to perform joins, however, is not the mainstream method that would most often be used in creating a system in recent years. Even though debate exists on the best join method, the fact that ETC utilizes the same approach as InteliClear is more than just a coincidence. When the InteliClear System was first licensed to ETC in 2008, it utilized a combination of fields to perform joins, and the version that ETC licensed continued to use a combination of fields rather than a unique field per table as a

primary key throughout the life of the license. Consequently, the presence of a combination of fields to perform joins in ETC's system, which ETC claims it created in the last two years, is further evidence that ETC improperly used logic of the InteliClear System in the last two years to construct its replacement system.

25. Second, Capsicum found in ETC's system tables that were nearly identical to InteliClear's tables and some that even contained "IC" or "ICDB" in their titles. After hearing ETC personnel refer to InteliClear as "IC," Capsicum concluded that "IC" in those titles referred to InteliClear. Furthermore, InteliClear, its customers (including ETC), and others in the industry often refer to InteliClear as "IC," as it is referred to in the License Agreement. Additionally, Capsicum observed that the comment history within the ETC database's stored procedures showed that ETC was making changes to InteliClear's stored procedures for the final two years before termination of its license to use the InteliClear System.

26. Second, Capsicum found in ETC's system tables that were nearly identical to InteliClear's tables and some that even contained "IC" or "ICDB" in their titles. After hearing ETC personnel refer to InteliClear as "IC," Capsicum concluded that "IC" in those titles referred to InteliClear. Furthermore, InteliClear, its customers (including ETC), and others in the industry often refer to InteliClear as "IC," as it is referred to in the License Agreement. Additionally, Capsicum observed that the comment history within the ETC database's stored procedures showed that ETC was making changes to InteliClear's stored procedures for the final two years before termination of its license to use the InteliClear System.

27. Consequently, InteliClear proposed to ETC that the parties direct Capsicum to release to them a more extensive report it had prepared that showed more specifically the similarities and overlap between the InteliClear System and ETC's system. As stated at the end of the Summary Report, Capsicum had issued the more general Summary Report because it had concerns that some of the information in its more extensive report might disclose the intellectual property of

one or both of the parties, which the Protocol had required Capsicum to avoid doing. ETC, however, refused to agree to direct Capsicum to release its more extensive report.

### D. Irreparable Harm

28. InteliClear's primary product is the InteliClear System. Unless the Court enjoins ETC from using any system derived from the InteliClear System, ETC will continue using its system derived from the InteliClear to service its customers and generate profits and will continue trying to sell or license it to others, thereby jeopardizing the economic and competitive value of the InteliClear System.

29. It is in the public's interest to prevent companies like ETC from licensing software systems; misappropriating the licensor's intellectual property, confidential and proprietary information, and trade secrets; terminating their license agreement; and then operating off of a new system derived from the licensor's system and offering the new system for sale or license to others.

### FIRST CLAIM FOR RELIEF

### (Misappropriation Under Defend Trade Secrets Act)

30. InteliClear repeats and realleges Paragraphs 1 through 29 as if set forth fully herein.

31. The InteliClear System is InteliClear's "trade secret," within the meaning of the definition of that term in the Defend Trade Secrets Act, 18 U.S.C. § 1839(3). InteliClear has taken reasonable measures to protect and keep secret the InteliClear System, which has independent economic value from not being generally known or ascertainable through proper means within the industry in which InteliClear sells and licenses the InteliClear System.

32. After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

33. Nevertheless, in violation of 18 U.S.C. § 1836(b), ETC misappropriated InteliClear's trade secret by using a derivation of the InteliClear

System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made by ETC and its customers throughout the United States and on stock exchanges across the country.

34. ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

35. ETC knew or had reason to know that its knowledge and use of InteliClear's trade secret derived from its use of the InteliClear System in a limited fashion under the License Agreement that did not include the right to copy or borrow for use outside the scope of or after expiration or termination of the License Agreement.

36. ETC's misappropriation of InteliClear's trade secret was "improper," within the meaning of 18 U.S.C. § 1839(6), because ETC had no lawful right to acquire InteliClear's trade secret and to base its system on or derive it from the InteliClear System, thus committing theft. Moreover, ETC falsely certified and misrepresented to InteliClear on March 5, 2018 that all derivative works based on the InteliClear System had been destroyed.

37. ETC's misappropriation of InteliClear's trade secret was willful and malicious.

38. As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

39. Also as a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and permanent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer

accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

## SECOND CLAIM FOR RELIEF
### (Misappropriation Under CUTSA)

40. InteliClear repeats and realleges Paragraphs 1 through 39 as if set forth fully herein.

41. The InteliClear System is its "trade secret," within the meaning of the definition of that term in the Uniform Trade Secrets Act as adopted in California, Cal. Civil Code § 3426.1(d).

42. After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

43. Nevertheless, in violation of Cal. Civil Code § 3426, ETC misappropriated InteliClear's trade secret by using a derivation of the InteliClear System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made by ETC and its customers throughout the United States and on stock exchanges across the country.

44. ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

45. InteliClear derives economic value from its trade secret because it is able to sell or license the InteliClear System to its customers.

46. The InteliClear System is not generally known by other persons or entities within the industry in which InteliClear sells and licenses the InteliClear System.

47. InteliClear makes reasonable efforts to treat the InteliClear System as secret.

48. ETC's misappropriation of InteliClear's trade secret was willful and malicious.

49. As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

50. Also as a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and permanent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

### THIRD CLAIM FOR RELIEF
### (Unfair Competition)

51. InteliClear repeats and realleges Paragraphs 1 through 50 as if set forth fully herein.

52. After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

53. Nevertheless, ETC continued to use a derivation of the InteliClear System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made for ETC's own account or on behalf of its customers throughout the United States and on stock exchanges across the country.

54. ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret. Furthermore, in its certification of March 5, 2018, ETC misrepresented to InteliClear that, among other things, it had destroyed all derivative works based on the InteliClear System.

55. ETC's use of the InteliClear System to build its own system was without InteliClear's consent and constitutes an unlawful or unfair business act or practice under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

56. As a result of ETC's unlawful or unfair business act or practice, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

57. Also as a result of ETC's unlawful or unfair business act or practice, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and permanent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or

participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff InteliClear, LLC prays for:

1. Preliminary and permanent equitable relief, pursuant to 18 U.S.C. § 1836(b)(3), Cal. Civil Code § 3426.2, Rule 65 of the Federal Rules of Civil Procedure, and the Court's equitable powers, (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, that is or are derived from, based on, or copied from InteliClear's electronic system for managing stock brokerage firm accounting, securities clearance, and securities settlement services, including the system previously licensed by InteliClear to ETC under the Software License Agreement effective January 1, 2008, as amended on or about September 12, 2012, (collectively, the "InteliClear System") and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, that are derived from, based on, or copied from the InteliClear System;

2. An Order requiring ETC to file with the Court within thirty (30) days after issuance of any preliminary or permanent injunction in this action a report in writing under oath setting forth in detail the manner and form in which it has

complied with the provisions of such injunction regarding all systems or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, that are derived from, based on, or copied from the InteliClear System;

    3.    Compensatory damages;

    4.    Damages for unjust enrichment under 18 U.S.C. § 1836(b)(3)(B)(i)(II) and Cal. Civil Code § 3426.3(a);

    5.    Exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and Cal. Civil Code § 3426.3(c);

    6.    Attorney's fees;

    7.    Expert fees;

    8.    Interest;

    9.    Costs; and

    10.    Such other and further relief as the Court deems just and proper.

DATED: December 13, 2018

UPDIKE, KELLY & SPELLACY, P.C.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/ *Kenneth A. O'Brien, Jr.*
        KENNETH A. O'BRIEN, JR.
        Attorneys for Plaintiff
        INTELICLEAR, LLC

## TRIAL BY JURY

Plaintiff demands trial by jury on all claims and issues triable by a jury.

DATED: December 13, 2018

       UPDIKE, KELLY & SPELLACY, P.C.

       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/ *Kenneth A. O'Brien, Jr.*
   KENNETH A. O'BRIEN, JR.
   Attorneys for Plaintiff
   INTELICLEAR, LLC