MORGAN, LEWIS & BOCKIUS LLP
BRIAN M. HOM, BAR NO. 240055
BRIAN.HOM@MORGANLEWIS.COM
300 SOUTH GRAND AVENUE
TWENTY-SECOND FLOOR
LOS ANGELES, CA  90071-3132
TEL:  +1.213.612.2500
FAX:  +1.213.612.2501
MORGAN, LEWIS & BOCKIUS LLP
J. KEVIN FEE, *PRO HAC VICE*
KEVIN.FEE@MORGANLEWIS.COM
1111 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC  20004-2541
TEL:  +1.202.739.3000
FAX:  +1.202.739.3001

MORGAN, LEWIS & BOCKIUS LLP
KATHRYN A. FEIEREISEL, *PRO HAC VICE*
KATIE.FEIEREISEL@MORGANLEWIS.COM
77 WEST WACKER DRIVE, FIFTH FLOOR
CHICAGO, IL  60601-5094
TEL:  +1.312.324.1000
FAX:  +1.312.324.1001

ATTORNEYS FOR DEFENDANT,
ETC GLOBAL HOLDINGS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| INTELICLEAR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ETC GLOBAL HOLDINGS, INC.,<br><br>Defendant. | Case No. 2:18-cv-10342-RGK-SK<br><br>**ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY**<br><br>Complaint served: December 24, 2018<br><br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850 |

1

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

Defendant ETC Global Holdings, Inc. ("ETC"), by and through its attorneys, Morgan, Lewis & Bockius, LLP, hereby answers InteliClear, LLC's ("InteliClear" or "Plaintiff") Complaint, denies all allegations not expressly admitted herein, and asserts its affirmative defenses as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 United States Code section 1331 and 18 United States Code section 1836(c) on the grounds that this is a civil action arising under the federal Defend Trade Secrets Act, 18 United States Code section 1836.

**ANSWER:**  ETC admits that Plaintiff purports to assert a claim under the federal Defend Trade Secrets Act and admits that the Court has federal question jurisdiction over such claim under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

2.      This Court has subject matter jurisdiction over all state law claims under 28 United States Code sections 1332(a) and 1367(a) on the grounds that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states, and on the grounds that the state law claims are so related to the claim under the Defend Trade Secrets Act that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**  ETC admits that the Court has supplemental jurisdiction over Plaintiff's only remaining state law claim, namely, its claim under the California Uniform Trade Secrets Act.  ETC denies the remaining allegations of this Paragraph.

3.      This Court has personal jurisdiction over ETC on the grounds that its principal place of business is located in this district.

**ANSWER:**  ETC admits this Court has personal jurisdiction over it for purposes of this matter.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

4.    Venue is proper in this district because ETC resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**ANSWER:**  ETC admits that venue is proper in this district for purposes of this matter.

## THE PARTIES

5.    InteliClear is a limited liability company organized under the laws of Connecticut with a principal place of business in Edison, New Jersey.  The members of InteliClear are A. Martinho Barretto, who is a citizen of New Jersey, Guy T. Powell, who is a citizen of New York, and John Paul DeVito, who is a citizen of New York.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph and therefore denies them.

6.    Defendant ETC is a Delaware corporation with a principal place of business in Los Angeles, California.

**ANSWER:**  ETC admits the allegations of this Paragraph.

## FACTS COMMON TO ALL CLAIMS

**A.    Software License Agreement**

7.    Since it began operating more than a decade ago, InteliClear's primary business has been the design, development, sale, license, and support of an electronic system designed to manage stock brokerage firm accounting, securities clearance, and securities settlement services.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph and therefore denies them.

8.    On January 9, 2008, InteliClear entered into a Software License Agreement effective January 1, 2008 (the "License Agreement"), with ETC's predecessor, Electronic Transaction Clearing, Inc. In the License Agreement, InteliClear is referred to as "IC."  In an Amendment entered into on or about

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

September 12, 2012, Electronic Transaction Clearing, Inc.'s rights, duties, and obligations under the License Agreement were assigned and delegated to ETC. The Amendment also increased the fees under the License Agreement to $45,000 per month.

**ANSWER:** ETC admits that InteliClear entered into a Software License Agreement (the "License Agreement") with Electronic Transaction Clearing, Inc., and that it entered into an amendment to the License Agreement on or about September 12, 2012 and that those documents speak for themselves. ETC denies InteliClear's characterization of those documents. The allegation that Electronic Transaction Clearing, Inc. is ETC's predecessor is a conclusion of law as to which no response is required and is, therefore, denied.

9. ETC is a broker-dealer of securities registered with the Financial Industry Regulatory Authority (hereinafter, "FINRA") and United States Securities and Exchange Commission (hereinafter, "SEC"). Under the License Agreement, InteliClear licensed to ETC an electronic system for, among other things, the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, which include direct customers and other broker-dealers for which ETC serves as a correspondent clearing broker. ETC used InteliClear's system to track, compile, and report data concerning stock and options trades made by ETC and its customers, which are located in various states and foreign countries, and on stock exchanges across the country. InteliClear's system provided ETC back office operational functionality, products, and services, including purchase and sales, cashiering, accounting, regulatory, margin, master tables, and all processing required for a self-clearing and correspondent clearing firm to operate efficiently and comply with the FINRA and SEC guidelines and regulations.

**ANSWER:** The allegation that under the License Agreement, InteliClear licensed to ETC an electronic system for, among other things, the recording,

MORGAN, LEWIS & BOCKIUS LLP ATTORNEYS AT LAW LOS ANGELES

4

processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, which include direct customers and other broker-dealers for which ETC serves as a correspondent clearing broker is a conclusion of law as to which no response is required and is, therefore, denied. ETC also denies the remaining allegations of this Paragraph.

10. In Section 1(j) of the License Agreement, ETC acknowledged and agreed that:

> all information of any kind IC [InteliClear] has supplied or provided to ETC in connection with the License including but not limited to the SOFTWARE, shall be exclusive, confidential, proprietary and copyrighted property of IC and as such constitutes IC's Proprietary Information (the "Proprietary Information"). ETC shall treat such Proprietary Information with the degree of care normally used to protect ETC's own confidential and proprietary information. During and after the term of this Agreement, ETC agrees to maintain the Proprietary Information in confidence and shall refrain from disclosure thereof to third parties and shall use the Proprietary Information solely in connection with use and application of the License and for no other use without the prior written consent of IC.

**ANSWER:** The License Agreement speaks for itself, and ETC denies InteliClear's characterization of the License Agreement.

11. The system that InteliClear licensed to ETC took InteliClear two years to design and develop. For ten years, InteliClear's system enabled ETC to track many types of information concerning securities transactions, including (a) the customer; (b) date, time, stock traded, number of shares and dollar value, profit, loss, and fees of each trade; (c) cost basis calculations and tax related information;

(d) dividends; (e) corporate actions and reorganizations of securities impacting customer holdings; (f) clearance, settlement, and reconciliation for the proper recordkeeping of customer transactions, positions, and securities-related activities in relation to self-regulatory organizations, depositories, and utilities that constitute the infrastructure of the securities industry; (g) margining of customer portfolios to allow for the utilization of assets in the acquisition of additional assets; (h) tabulation of regulatory reports; and (i) archiving and retrieval of historical transactional information.

**ANSWER:** ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this Paragraph and therefore denies them. ETC denies the remaining allegations of this Paragraph.

12. While other companies offer products that track similar information, the InteliClear system's unique design and concepts and the unique software, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which the InteliClear system's components interrelate and process data (collectively, the "InteliClear System") are InteliClear's intellectual property, confidential and proprietary information, and trade secrets that InteliClear has taken reasonable measures to protect and keep secret (e.g., by Section 1(j) of the License Agreement quoted above and in similar license agreements with other customers) and that have independent economic value from not being generally known to or ascertainable by someone other than a licensor of the InteliClear System.

**ANSWER:** ETC admits that other companies offer products that track similar information. ETC denies the remaining allegations of this Paragraph.

**B.    Termination of the License Agreement**

13. By letter dated November 20, 2017, ETC provided to InteliClear notice of termination of the License Agreement, effective at the end of the then current term, the last day of which was February 28, 2018. In that letter, ETC described its work plan to "cease use of and remove the InteliClear system from its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

operating environment . . . ." In particular, ETC committed to "remove the InteliClear database from all systems" by February 26, 2018.

**ANSWER:** ETC admits that it provided InteliClear with a notice of termination of the License Agreement by letter dated November 20, 2017 and that this letter speaks for itself. ETC denies InteliClear's characterization of this letter.

14. By letter dated March 5, 2018, ETC certified to InteliClear that:

- All usage of the InteliClear system has been discontinued
- All instances of the InteliClear databases have been removed from all Company servers
- All instances of the InteliClear front-end GUI software have been removed from all Company servers
- Any and all back-up copies of the InteliClear system software have been destroyed
- Any and all system documentation, including data structures, specifications, system code and derivative works have been destroyed

**ANSWER:** ETC admits that it sent a letter to InteliClear dated March 5, 2018 and that this letter speaks for itself. ETC denies InteliClear's characterization of this letter.

**C.     ETC's Misappropriation of InteliClear's Trade Secrets**

15. Since termination of the License Agreement, ETC has continued to track securities trading but has done so on a system that it claims it developed and that it claims is not derived from the InteliClear System.

**ANSWER:** ETC admits that, since termination of the License Agreement, it has continued to track securities trading, but has done so on a system that it independently developed and that was not derived from the so-called InteliClear System.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

16.  Despite and contrary to ETC's certifications, however, there are several grounds for concluding that ETC improperly copied, lifted, or otherwise misappropriated InteliClear's intellectual property, confidential and proprietary information, and trade secrets by developing a system derived in material part from the InteliClear System.

**ANSWER:**  ETC denies the allegations of this Paragraph.

17.  InteliClear learned from a former ETC employee that prior to giving notice of termination of the License Agreement, ETC started its efforts to build a replacement system, not from scratch but rather based on and derived from the InteliClear System as a guide and model.

**ANSWER:**  ETC denies that "ETC started its efforts to build a replacement system, not from scratch but rather based on and derived from the InteliClear System as a guide and model."  ETC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this Paragraph and therefore denies them.

18.  In cooperating with ETC during the transition period in the last month of the License Agreement in February 2018, InteliClear noticed that certain of the InteliClear System's unique features appeared in the system that ETC would be using to replace the InteliClear System.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of what InteliClear claims to have noticed and therefore denies this allegation.  ETC denies that any unique features from the so-called InteliClear System appear in the system that ETC used to replace the InteliClear System.

19.  At various times, InteliClear has heard that ETC was offering its system for sale to others.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph and therefore denies them.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

20.    As a result, InteliClear contacted ETC in April 2018, explained its suspicions that ETC had improperly used the InteliClear System to build its replacement system, and demanded that ETC cease using its replacement system and trying to sell its replacement system.  InteliClear also demanded ETC permit a computer technology and forensic expert hired by InteliClear access to ETC's system to compare it to the InteliClear System.

**ANSWER:**  ETC admits the allegations of this Paragraph.

21.    After months of negotiations, ETC finally agreed to give InteliClear's expert, Capsicum Group, LLC (hereinafter, "Capsicum"), access to ETC's system pursuant to a Protocol agreed to by the parties in August 2018.

**ANSWER:**  ETC admits that it voluntarily agreed to give Capsicum Group, LLC access to ETC's system pursuant to a protocol agreed to by the parties in 2018 because it knew that it had not engaged in any improper conduct.  ETC denies the remaining allegations of this Paragraph.

22.    In preparation for Capsicum's comparison of ETC's system to the InteliClear System, InteliClear provided to Capsicum certain features of the InteliClear System that it believes are unique and that Capsicum should search for in ETC's system.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph and therefore denies them.

23.    On November 2, 2018, Capsicum issued its Summary Report, which concluded on page 4 that:

> Capsicum identified distinct similarities/overlaps between the ETC and InteliClear databases.  These include tables with nearly identical field names, field names that appear to have the same business definitions, multiple similar or identical combinations of fields, and similar fields within the databases.  Both ETC and InteliClear tend to use a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

combination of fields rather than unique IDs as a primary key. The ETC stored procedures . . . indicate a comment-history that shows ETC' s database was developed over a two-year period while the License Agreement was still in effect and incorporated the IP of InteliClear.

Based on its research and findings, Capsicum believes that ETC built its source code using InteliClear IP.

**ANSWER:** ETC admits that Capsicum issued a Summary Report on November 2, 2018 and that the Summary Report speaks for itself. ETC denies InteliClear's characterization of the Summary Report and denies the remaining allegations of this Paragraph.

24. Two of Capsicum's findings illustrate how ETC improperly used the logic and database architecture contained in the InteliClear System to create its own system. First, ETC used a combination of fields to perform joins, which are instructions to combine data from two entities. Using a combination of fields to perform joins, however, is not the mainstream method that would most often be used in creating a system in recent years. Even though debate exists on the best join method, the fact that ETC utilizes the same approach as InteliClear is more than just a coincidence. When the InteliClear System was first licensed to ETC in 2008, it utilized a combination of fields to perform joins, and the version that ETC licensed continued to use a combination of fields rather than a unique field per table as a primary key throughout the life of the license. Consequently, the presence of a combination of fields to perform joins in ETC's system, which ETC claims it created in the last two years, is further evidence that ETC improperly used logic of the InteliClear System in the last two years to construct its replacement system.

**ANSWER:** ETC admits that Capsicum issued a Summary Report on November 2, 2018 and that the Summary Report speaks for itself. ETC denies

InteliClear's characterization of the Summary Report and denies the remaining allegations of this Paragraph.

25. Capsicum found in ETC's system tables that were nearly identical to InteliClear's tables and some that even contained "IC" or "ICDB" in their titles. After hearing ETC personnel refer to InteliClear as "IC," Capsicum concluded that "IC" in those titles referred to InteliClear. Furthermore, InteliClear, its customers (including ETC), and others in the industry often refer to InteliClear as "IC," as it is referred to in the License Agreement. Additionally, Capsicum observed that the comment history within the ETC database's stored procedures showed that ETC was making changes to InteliClear's stored procedures for the final two years before termination of its license to use the InteliClear System.

**ANSWER:** ETC admits that Capsicum issued a Summary Report on November 2, 2018 and that the Summary Report speaks for itself. ETC denies InteliClear's characterization of the Summary Report and denies the remaining allegations of this Paragraph.

26. Capsicum found in ETC's system tables that were nearly identical to InteliClear's tables and some that even contained "IC" or "ICDB" in their titles. After hearing ETC personnel refer to InteliClear as "IC," Capsicum concluded that "IC" in those titles referred to InteliClear. Furthermore, InteliClear, its customers (including ETC), and others in the industry often refer to InteliClear as "IC," as it is referred to in the License Agreement. Additionally, Capsicum observed that the comment history within the ETC database's stored procedures showed that ETC was making changes to InteliClear's stored procedures for the final two years before termination of its license to use the InteliClear System.

**ANSWER:** ETC admits that Capsicum issued a Summary Report on November 2, 2018 and that the Summary Report speaks for itself. ETC denies InteliClear's characterization of the Summary Report and denies the remaining allegations of this Paragraph.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

27.     Consequently, InteliClear proposed to ETC that the parties direct Capsicum to release to them a more extensive report it had prepared that showed more specifically the similarities and overlap between the InteliClear System and ETC's system.  As stated at the end of the Summary Report, Capsicum had issued the more general Summary Report because it had concerns that some of the information in its more extensive report might disclose the intellectual property of one or both of the parties, which the Protocol had required Capsicum to avoid doing. ETC, however, refused to agree to direct Capsicum to release its more extensive report.

**ANSWER:**  ETC admits that Capsicum issued a Summary Report on November 2, 2018 and that the Summary Report speaks for itself.  ETC admits that InteliClear proposed to ETC that the parties direct Capsicum to release a purported "more extensive report."  ETC admits that it did not agree to this proposal.  ETC denies InteliClear's characterization of the Summary Report and the parties' negotiations regarding the alleged "more extensive report" and denies the remaining allegations of this Paragraph.

### D.     **Irreparable Harm**

28.     InteliClear's primary product is the InteliClear System.  Unless the Court enjoins ETC from using any system derived from the InteliClear System, ETC will continue using its system derived from the InteliClear to service its customers and generate profits and will continue trying to sell or license it to others, thereby jeopardizing the economic and competitive value of the InteliClear System.

**ANSWER:**  ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this Paragraph and therefore denies them.  ETC denies the remaining allegations of this Paragraph.

29.     It is in the public's interest to prevent companies like ETC from licensing software systems; misappropriating the licensor's intellectual property, confidential and proprietary information, and trade secrets; terminating their license

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

agreement; and then operating off of a new system derived from the licensor's system and offering the new system for sale or license to others.

**ANSWER:** ETC denies the allegations of this Paragraph.

## FIRST CLAIM FOR RELIEF

### (Misappropriation Under Defend Trade Secrets Act)

30.     InteliClear repeats and realleges Paragraphs 1 through 29 as if set forth fully herein.

**ANSWER:** ETC repeats its answers to Paragraphs 1 through 29 as though fully set forth herein.

31.     The InteliClear System is InteliClear's "trade secret," within the meaning of the definition of that term in the Defend Trade Secrets Act, 18 United States Code section 1839(3).  InteliClear has taken reasonable measures to protect and keep secret the InteliClear System, which has independent economic value from not being generally known or ascertainable through proper means within the industry in which InteliClear sells and licenses the InteliClear System.

**ANSWER:** The allegation that the InteliClear System is InteliClear's trade secret is a conclusion of law as to which no response is required and is, therefore, denied.  ETC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this Paragraph and therefore denies them.

32.     After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

**ANSWER:** This allegation constitutes a conclusion of law as to which no response is required and is, therefore, denied.

33.     Nevertheless, in violation of 18 United States Code section 1836(b), ETC misappropriated InteliClear's trade secret by using a derivation of the InteliClear System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made by ETC

and its customers throughout the United States and on stock exchanges across the country.

**ANSWER:** ETC denies the allegations of this Paragraph.

34.   ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

**ANSWER:** ETC denies the allegations of this Paragraph.

35.   ETC knew or had reason to know that its knowledge and use of InteliClear's trade secret derived from its use of the InteliClear System in a limited fashion under the License Agreement that did not include the right to copy or borrow for use outside the scope of or after expiration or termination of the License Agreement.

**ANSWER:** ETC denies the allegations of this Paragraph.

36.   ETC's misappropriation of InteliClear's trade secret was "improper," within the meaning of 18 United States Code section 1839(6), because ETC had no lawful right to acquire InteliClear's trade secret and to base its system on or derive it from the InteliClear System, thus committing theft.  Moreover, ETC falsely certified and misrepresented to InteliClear on March 5, 2018, that all derivative works based on the InteliClear System had been destroyed.

**ANSWER:** ETC denies the allegations of this Paragraph.

37.   ETC's misappropriation of InteliClear's trade secret was willful and malicious.

**ANSWER:** ETC denies the allegations of this Paragraph.

38.   As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

**ANSWER:** ETC denies the allegations of this Paragraph.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

39.     As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and permanent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

**ANSWER:**  ETC denies the allegations of this Paragraph.

## SECOND CLAIM FOR RELIEF

### (Misappropriation Under CUTSA)

40.     InteliClear repeats and realleges Paragraphs 1 through 39 as if set forth fully herein.

**ANSWER:**  ETC repeats its answers to Paragraphs 1 through 39 as though fully set forth herein.

41.     The InteliClear System is its "trade secret," within the meaning of the definition of that term in the Uniform Trade Secrets Act as adopted in California under California Civil Code section 3426.1(d).

**ANSWER:**  The allegation that the InteliClear System is InteliClear's trade secret is a conclusion of law as to which no response is required and is, therefore, denied.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY

42. After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

**ANSWER:** This allegation constitutes a conclusion of law as to which no response is required and is, therefore, denied.

43. Nevertheless, in violation of California Civil Code section 3426, ETC misappropriated InteliClear's trade secret by using a derivation of the InteliClear System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made by ETC and its customers throughout the United States and on stock exchanges across the country.

**ANSWER:** ETC denies the allegations of this Paragraph.

44. ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

**ANSWER:** ETC denies the allegations of this Paragraph.

45. InteliClear derives economic value from its trade secret because it is able to sell or license the InteliClear System to its customers.

**ANSWER:** ETC denies the allegations of this Paragraph.

46. The InteliClear System is not generally known by other persons or entities within the industry in which InteliClear sells and licenses the InteliClear System.

**ANSWER:** ETC denies the allegations of this Paragraph.

47. InteliClear makes reasonable efforts to treat the InteliClear System as secret.

**ANSWER:** ETC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph and therefore denies them.

48. ETC's misappropriation of InteliClear's trade secret was willful and malicious.

**ANSWER:** ETC denies the allegations of this Paragraph.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

49.    As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

**ANSWER:**  ETC denies the allegations of this Paragraph.

50.    As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and permanent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

**ANSWER:**  ETC denies the allegations of this Paragraph.

### THIRD CLAIM FOR RELIEF

### (Unfair Competition)

51.    InteliClear repeats and realleges Paragraphs 1 through 50 as if set forth fully herein.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

52.    After its termination of the License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

53.     Nevertheless, ETC continued to use a derivation of the InteliClear System in ETC's replacement system after termination of the License Agreement to track, compile, and report data concerning stock trades made for ETC's own account or on behalf of its customers throughout the United States and on stock exchanges across the country.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

54.     ETC's use of the InteliClear System to build its own system was without InteliClear's consent and contrary to the License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret. Furthermore, in its certification of March 5, 2018, ETC misrepresented to InteliClear that, among other things, it had destroyed all derivative works based on the InteliClear System.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

55.     ETC's use of the InteliClear System to build its own system was without InteliClear's consent and constitutes an unlawful or unfair business act or practice under the California Unfair Competition Law, California Business & Professions Code sections 17200 et seq.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

56.     As a result of ETC's unlawful or unfair business act or practice, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

**ANSWER:**  No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019.  (*See* ECF No. 31.)

57. As a result of ETC's unlawful or unfair business act or practice, InteliClear has been and will continue to be irreparably harmed unless the Court issues preliminary and petnianent equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC from using, continuing to use, selling, or attempting to sell any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC' s own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC to destroy all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC's own account or on behalf of its customers.

**ANSWER:** No Answer to this Paragraph is required, as this claim was dismissed pursuant the Court's Order dated April 4, 2019. (*See* ECF No. 31.)

## ANSWER TO PRAYER FOR RELIEF

ETC denies all allegations in InteliClear's Prayer for Relief and denies that InteliClear is entitled to any relief whatsoever.

## GENERAL DENIAL

ETC denies each and every allegation, matter, or thing contained in the Complaint, express or implied, not expressly admitted herein.

## AFFIRMATIVE DEFENSES

In support of the following defenses, ETC incorporates all of its Answers listed above, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. ETC reserves all other defenses at law or in equity that may exist now or in the future based upon discovery and further factual investigation in this case.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

1.      InteliClear is barred from claiming trade secret misappropriation as to any items of information that were readily ascertainable by proper means at the time of the alleged misappropriation.

2.      The Complaint fails to state a claim upon which relief can be granted.

3.      InteliClear's claims are barred because InteliClear has failed to sufficiently plead and particularize its claims.

4.      InteliClear's claims are barred because of a failure to mitigate damages, if such damages exist.

5.      Any remedies sought by InteliClear are limited to the extent that InteliClear seeks overlapping or duplicative recovery through the claims asserted against ETC for any alleged single wrong.

6.      InteliClear is not entitled to injunctive relief due to its unreasonable and/or inexcusable delay.

Dated:   April 19, 2019

MORGAN, LEWIS & BOCKIUS LLP


By  *s/ Brian M. Hom*
       Brian M. Hom
       Attorney for Defendant,
       ETC GLOBAL HOLDINGS, INC.

## REQUEST FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, ETC hereby demands a trial by jury of all issues so triable.

Dated:   April 19, 2019                    MORGAN, LEWIS & BOCKIUS LLP


By  *s/ Brian M. Hom*
    Brian M. Hom
    Attorney for Defendant,
    ETC GLOBAL HOLDINGS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.


By: *s/ Renee Robles*
     Renee Robles

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

ANSWER TO COMPLAINT AND DEMAND FOR TRIAL BY JURY