UPDIKE, KELLY & SPELLACY, P.C.
RICHARD S. ORDER Pro hac vice
rorder@uks.com
ADAM B. MARKS Pro hac vice
amarks@uks.com
100 Pearl Street, P.O. Box 231277
Hartford, CT 06123-1277
Telephone:   860-548-2600
Facsimile:   860-548-2680

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
KENNETH A. O'BRIEN, JR., Cal. Bar No. 160171
kobrien@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Plaintiff, INTELICLEAR, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| INTELICLEAR, LLC., <br><br>           Plaintiff, <br><br>      v. <br><br> ELECTRONIC TRANSACTION CLEARING, INC. d/b/a APEX PRO, ETC PROCESSING TECHNOLOGIES LLC, and ETC GLOBAL HOLDINGS, INC., <br><br>           Defendants. | Case No. 2:18-cv-10342-RGK-SK <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br>   1. **MISAPPROPRIATION UNDER DEFEND TRADE SECRETS ACT;** <br>   2. **MISAPPROPRIATION UNDER CUTSA;** <br>   3. **BREACH OF CONTRACT;** <br>   4. **BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff InteliClear, LLC ("InteliClear"), as and for its First Amended Complaint against defendants Electronic Transaction Clearing, Inc. ("ETC Clearing"), ETC Processing Technologies LLC ("ETC Processing"), and ETC Global Holdings, Inc. ("ETC Global") (collectively, "ETC"), alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) on the grounds that this is a civil action arising under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

2.      This Court has subject matter jurisdiction over all state law claims under 28 U.S.C. §§ 1332(a) and 1367(a) on the grounds that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states and on the grounds that the state law claims are so related to the claim under the Defend Trade Secrets Act that they form part of the same case or controversy under Article III of the United States Constitution.

3.      This Court has personal jurisdiction over ETC Clearing, ETC Processing, and ETC Global on the grounds that each of their principal places of business is located in this district.

4.      Venue is proper in this district because ETC Clearing, ETC Processing, and ETC Global reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

5.      Plaintiff InteliClear is a limited liability company organized under the laws of Connecticut with a principal place of business in New Brunswick, New Jersey.  The members of InteliClear are A. Martin Barretto, who is a citizen of New Jersey, Guy T. Powell, who is a citizen of Pennsylvania, and John Paul DeVito, who is a citizen of New York.

FIRST AMENDED COMPLAINT AND
JURY DEMAND

6.     Defendant ETC Clearing is a Delaware corporation with a principal place of business in Los Angeles, California.  Prior to early September 2019, ETC Clearing was a wholly owned subsidiary of ETC Global.

7.     On September 9, 2019, PEAK6, a Chicago-based investment and technology firm, announced it had acquired ETC Clearing.  In its press release, PEAK6 stated that ETC Clearing's "institutional orientation will expand PEAK6's footprint in custody and clearing and is a direct complement to one of its core businesses, Apex Clearing, which is primarily focused on the retail marketplace.  The transaction will align ETC [Clearing] and Apex, two firms with a shared mission to improve foundational financial processes with technology, and position both organizations as alternatives to traditional custodians through the delivery of flexible, customizable, digital solutions that facilitate speed and innovation."

8.     The press release further stated, "'We look forward to exploring how stronger alignment between the ETC [Clearing] and Apex Clearing brands can result in growth and expansion for both companies and their respective clients,' said Bill Capuzzi, partner at PEAK6 and Chief Executive Officer of Apex Clearing.  'Combining each firm's distinct philosophy of leveraging technology to enhance service and increase efficiency will strengthen our commitment to leading the digital revolution in custody and clearing.'"

9.     In fact, the "stronger alignment" between ETC Clearing and Apex Clearing Corporation is readily apparent on the Financial Industry Regulatory Authority's BrokerCheck where ETC Clearing is listed not only by its name but also as doing business as "Apex Pro."  Moreover, ETC Clearing and Apex Clearing are sister subsidiaries of Apex Clearing Holdings LLC, which, in turn, is owned by PEAK6 Investments LLC.

10.    Defendant ETC Processing is a limited liability company organized under the laws of Delaware with a principal place of business in Los Angeles, California.  The members of ETC Processing are Harvey Cloyd, Rabsy Collins,

Elijah Mills, and Barnaby Hatchman, who are current or former officers or employees of ETC and are citizens of California. Upon information and belief, ETC Processing is a subsidiary or affiliate of ETC Global and has provided technology services to ETC-related entities, including ETC Global and ETC Clearing, and continues to provide technology services to ETC Clearing/Apex Pro.

11. Defendant ETC Global is a Delaware corporation with a principal place of business in Los Angeles, California. As its full name suggests, ETC Global is a holding company, owning at least ETC Clearing up to September 9, 2019 and owning, either directly or indirectly, and/or controlling ETC Processing through certain of ETC's current or former officers and employees.

## FACTS COMMON TO ALL CLAIMS

### A. Software License Agreement

12. Since it began operating more than a decade ago, InteliClear's primary business has been the design, development, sale, license, and support of an electronic system designed to manage stock brokerage firm accounting, securities clearance, and securities settlement services.

13. On January 9, 2008, InteliClear entered into a Software License Agreement effective January 1, 2008 (the "License Agreement") with ETC Clearing. In the License Agreement, InteliClear is referred to as "IC."

14. ETC Clearing is a broker-dealer of securities registered with the Financial Industry Regulatory Authority ("FINRA") and United States Securities and Exchange Commission ("SEC"). Under the License Agreement, InteliClear licensed to ETC Clearing an electronic system for, among other things, the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, which include direct customers and other broker-dealers for which ETC Clearing serves as a correspondent clearing broker. ETC Clearing used InteliClear's system to track, compile, and report data concerning stock and options trades made by ETC Clearing

and its customers, which are located in various states and foreign countries, and on stock exchanges across the country.  InteliClear's system provided ETC Clearing back office operational functionality, products, and services, including purchase and sales, cashiering, accounting, regulatory, margin, master tables, and all processing required for a self-clearing and correspondent clearing firm to operate efficiently and comply with the FINRA and SEC guidelines and regulations.

15.     In Section 1 of an Amendment to Software License Agreement entered into on or about September 12, 2012 (the "Amended License Agreement"), ETC Clearing's rights, duties, and obligations under the License Agreement were assigned and delegated to ETC Global, which had been incorporated more than two years after InteliClear and ETC Clearing had entered into the License Agreement. ETC Global was created in a corporate restructuring or reorganization to serve as a holding company and was not intended to directly operate the InteliClear system under the Amended License Agreement.  Rather, the parties intended that ETC Global's subsidiaries and affiliates, including ETC Clearing and ETC Processing, would be the entities operating the InteliClear system under the Amended License Agreement.  In fact, after assignment and delegation of the License Agreement to ETC Global, ETC Clearing continued to be the primary ETC entity that used, operated, and ran the InteliClear system.

16.     The Amended License Agreement also, among other things, increased the fees to $45,000 per month, but the main purpose of the amendment was to allow ETC Global, as a holding company, to hold the rights to the license of the InteliClear system and to permit its subsidiaries and affiliates to use and enjoy the benefits of the license.

17.     In Section 1(j) of the License Agreement and the Amended License Agreement, ETC Clearing and ETC Global acknowledged and agreed that:

all information of any kind IC [InteliClear] has supplied or provided to ETC in connection with the License including but not limited to the SOFTWARE,

-5-

shall be exclusive, confidential, proprietary and copyrighted property of IC and as such constitutes IC's Proprietary Information (the "Proprietary Information").  ETC shall treat such Proprietary Information with the degree of care normally used to protect ETC's own confidential and proprietary information.  During and after the term of this Agreement, ETC agrees to maintain the Proprietary Information in confidence and shall refrain from disclosure thereof to third parties and shall use the Proprietary Information solely in connection with use and application of the License and for no other use without the prior written consent of IC.

18.     The system that InteliClear licensed initially to ETC Clearing and, in turn, to ETC Global took InteliClear two years to design and develop.  For ten years, InteliClear's system enabled ETC Clearing to track many types of information concerning securities transactions, including (a) the customer; (b) date, time, stock traded, number of shares and dollar value, profit, loss, and fees of each trade; (c) cost basis calculations and tax related information; (d) dividends; (e) corporate actions and reorganizations of securities impacting customer holdings; (f) clearance, settlement, and reconciliation for the proper recordkeeping of customer transactions, positions, and securities-related activities in relation to self-regulatory organizations, depositories, and utilities that constitute the infrastructure of the securities industry; (g) margining of customer portfolios to allow for the utilization of assets in the acquisition of additional assets; (h) tabulation of regulatory reports; and (i) archiving and retrieval of historical transactional information.

19.     While other companies offer products that track similar information, the InteliClear system's unique design and concepts and the unique software, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which the InteliClear system's components interrelate and process data (collectively, the "InteliClear System") are InteliClear's intellectual property, confidential and proprietary information, and trade secrets that InteliClear has taken

-6-

reasonable measures to protect and keep secret (*e.g.*, by Section 1(j) of the License Agreement and the Amended License Agreement quoted above and in similar license agreements with other customers) and that have independent economic value from not being generally known to or ascertainable by someone other than a licensor of the InteliClear System.

**B.    Termination of the Amended License Agreement**

20.    By letter dated November 20, 2017, Rabsy Collins, Senior Vice President of ETC Global, provided to InteliClear a notice of ETC Global's termination of the Amended License Agreement, effective at the end of the then current term, the last day of which was February 28, 2018.  In that letter, ETC Global described its work plan to "cease use of and remove the InteliClear system from its operating environment . . . ."  In particular, ETC Global stated that "ETC will remove the InteliClear database from all systems" by February 26, 2018.

21.    By letter dated March 5, 2018, Harvey Cloyd, Chief Executive Officer of ETC Global, and Barnaby Hatchman, Chief Technology Officer of ETC Processing, certified to InteliClear that:

- All usage of the InteliClear system has been discontinued
- All instances of the InteliClear databases have been removed from all Company servers
- All instances of the InteliClear front-end GUI software have been removed from all Company servers
- Any and all back-up copies of the InteliClear system software have been destroyed
- Any and all system documentation, including data structures, specifications, system code and derivative works have been destroyed

22.    Cloyd and Hatchman further stated, "This certification is made on behalf of ETC [Global] and its subsidiaries, effective March 1, 2018, based on and

1 in reliance upon the representations of Barnaby Hatchman, Chief Technology

2 Officer of ETC Processing Technologies."

3      23.    Section 15 of the Amended License Agreement required ETC Global,

4 upon giving notice of termination, to "provid[e] in writing a certified work plan how

5 ETC will cease to use the software and remove it from its operating environment."

6 The November 20, 2017 notice of termination provided ETC Global's proposed

7 work plan, and the March 5, 2018 letter provided ETC Global's certification of that

8 work plan.

9    **C.**    **ETC's Misappropriation of InteliClear's Trade Secrets**

10      24.    Since termination of the Amended License Agreement, ETC Clearing

11 has continued to track securities trading but claims it has done so on a system that it

12 or its affiliates, including ETC Processing, developed and that ETC claims is not

13 derived from the InteliClear System.

14      25.    Upon information and belief, however, ETC's certifications were false

15 because ETC did not remove the InteliClear System from its servers but rather

16 continued to use, operate, and run the InteliClear System well after the Amended

17 License Agreement termination date of February 28, 2018.

18      26.    Additionally, despite and contrary to ETC's certifications, there are

19 several grounds for concluding that ETC improperly copied, lifted, or otherwise

20 misappropriated InteliClear's intellectual property, confidential and proprietary

21 information, and trade secrets by developing a system derived in material part from

22 the InteliClear System.

23      27.    InteliClear learned from a former ETC Clearing Chief Executive

24 Officer that prior to giving notice of termination of the Amended License

25 Agreement, ETC started its efforts to build a replacement system, not from scratch

26 but rather based on and derived from the InteliClear System as a guide and model.

27      28.    Additionally, in cooperating with ETC during the transition period in

28 the last month of the Amended License Agreement in February 2018, InteliClear

noticed that certain of the InteliClear System's unique features appeared in the system that ETC would be using to replace the InteliClear System.

29.     ETC referred to its replacement system as the Matrix system.  Upon information and belief, the Matrix system was constructed by ETC Processing and has been used primarily by ETC Clearing.

30.     At various times, InteliClear has heard that ETC was offering the InteliClear System,  the Matrix system, or some other system improperly derived from the InteliClear System for sale to others.

31.     As a result, InteliClear contacted ETC in April 2018, explained its suspicions that ETC had improperly used the InteliClear System to build its replacement system, and demanded that ETC cease using its replacement system and trying to sell its replacement system.  InteliClear also demanded ETC permit a computer technology and forensic expert hired by InteliClear access to ETC's system to compare it to the InteliClear System.

32.     After months of negotiations, ETC finally agreed to give InteliClear's expert, Capsicum Group, LLC ("Capsicum"), access to ETC's system pursuant to a Protocol agreed to by the parties in August 2018.

33.     In preparation for Capsicum's comparison of ETC's system to the InteliClear System, InteliClear provided to Capsicum certain features of the InteliClear System that it believes are unique and that Capsicum should search for in ETC's system.

34.     On November 2, 2018, Capsicum issued its Summary Report, which concluded on page 4 that:

> Capsicum identified distinct similarities/overlaps between the ETC and
> InteliClear databases.  These include tables with nearly identical field
> names, field names that appear to have the same business definitions,
> multiple similar or identical combinations of fields, and similar fields
> within the databases.  Both ETC and InteliClear tend to use a

combination of fields rather than unique IDs as a primary key.  The ETC stored procedures . . . indicate a comment-history that shows ETC's database was developed over a two-year period while the License Agreement was still in effect and incorporated the IP of InteliClear.

Based on its research and findings, Capsicum believes that ETC built its source code using InteliClear IP.

35.     Two of Capsicum's findings illustrate how ETC improperly used the logic and database architecture contained in the InteliClear System to create its own system.  First, ETC used a combination of fields to perform joins, which are instructions to combine data from two entities.  Using a combination of fields to perform joins, however, is not the mainstream method that would most often be used in creating a system in recent years.  Even though debate exists on the best join method, the fact that ETC utilizes the same approach as InteliClear is more than just a coincidence.  When the InteliClear System was first licensed to ETC Clearing in 2008, it utilized a combination of fields to perform joins, and the version that ETC licensed continued to use a combination of fields rather than a unique field per table as a primary key throughout the life of the license.  Consequently, the presence of a combination of fields to perform joins in ETC's system, which ETC claims it created in the last two years of the Amended License Agreement, is further evidence that ETC improperly used logic of the InteliClear System in the last two years of the Amended License Agreement to construct its replacement system.

36.     Second, Capsicum found tables in ETC's system that were nearly identical to InteliClear's tables and some that even contained "IC" or "ICDB" in their titles.  After hearing ETC personnel refer to InteliClear as "IC," Capsicum concluded that "IC" in those titles referred to InteliClear.  Furthermore, InteliClear, its customers (including ETC), and others in the industry often refer to InteliClear as "IC," as it is referred to in the Amended License Agreement.  Additionally,

Capsicum observed that the comment history within the ETC database's stored procedures showed that ETC was making changes to InteliClear's stored procedures for the final two years before termination of its license to use the InteliClear System.

37.     Capsicum's Summary Report was general because Section 5 of the Protocol required it to "report its findings to the parties through their counsel in a manner that sufficiently informs the parties but does not disclose in detail the IP of either party, to the extent that is possible."  At the end of the Summary Report, Capsicum stated that it had prepared a more extensive and detailed report but that it sought guidance from the parties before releasing it to them.

38.     After Capsicum issued the Summary Report, InteliClear contacted ETC in an attempt to resolve its claim that ETC misappropriated InteliClear's intellectual property, confidential and proprietary information, and trade secrets.  ETC, however, continued to maintain that it did nothing wrong and that Capsicum's Summary Report did not demonstrate it had done anything wrong.

39.     Consequently, InteliClear proposed to ETC that the parties direct Capsicum to release to them the more extensive report it had prepared that showed more specifically the similarities and overlap between the InteliClear System and ETC's system.  As stated at the end of the Summary Report, Capsicum had issued the more general Summary Report because it had concerns that some of the information in its more extensive report might disclose the intellectual property of one or both of the parties, which the Protocol had required Capsicum to avoid doing. ETC, however, refused to agree to jointly direct Capsicum to release its more extensive report.

40.     After PEAK6 acquired, either directly or indirectly, ETC Clearing in September 2019, on information and belief, it merged or otherwise unified the marketing, sales, and operations of ETC Clearing and Apex Clearing.  In fact, ETC's Matrix system and any other ETC system derived from the InteliClear System that ETC was using have been renamed Apex Pro.  Thus, ETC Clearing

1  and/or Apex Clearing are using a system improperly derived from the InteliClear

2  System.

3      41.    Consequently, InteliClear's fear that ETC would sell the InteliClear

4  System or a system improperly derived from it has come true, with the twist that

5  instead of simply selling the InteliClear System or a system improperly derived from

6  it, ETC Global sold them as assets through the sale of ETC Clearing to PEAK6.

7      **D.**    **<u>Irreparable Harm</u>**

8      42.    InteliClear's primary product is the InteliClear System.  Unless the

9  Court enjoins ETC from using the InteliClear System or any system derived from

10  the InteliClear System, ETC will continue using the InteliClear System or ETC's

11  system derived from the InteliClear System to service its customers and generate

12  profits and will continue trying to sell or license it to others, thereby jeopardizing

13  the economic and competitive value of the InteliClear System.

14      43.    It is in the public's interest to prevent companies like ETC from

15  licensing software systems; misappropriating the licensor's intellectual property,

16  confidential and proprietary information, and trade secrets; terminating their license

17  agreement; and then operating off of the licensor's system or a new system derived

18  from the licensor's system and offering the new system for sale or license to others.

19      **<u>FIRST CLAIM FOR RELIEF</u>**

20      **(Misappropriation Under Defend Trade Secrets Act Against All Defendants)**

21      44.    InteliClear repeats and realleges Paragraphs 1 through 43 as if set forth

22  fully herein.

23      45.    The InteliClear System is InteliClear's "trade secret," within the

24  meaning of the definition of that term in the Defend Trade Secrets Act, 18 U.S.C. §

25  1839(3).  InteliClear has taken reasonable measures to protect and keep secret the

26  InteliClear System, which has independent economic value from not being generally

27  known or ascertainable through proper means within the industry in which

28  InteliClear sells and licenses the InteliClear System.

46.     After the February 28, 2018 effective termination date of the Amended License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

47.     Nevertheless, in violation of 18 U.S.C. § 1836(b), ETC misappropriated InteliClear's trade secret by continuing to operate the InteliClear System and by using a derivation of the InteliClear System in ETC's replacement system after termination of the Amended License Agreement to track, compile, and report data concerning stock trades made by ETC Clearing and its customers throughout the United States and on stock exchanges across the country.

48.     ETC's continued operation of the InteliClear System and its use of the InteliClear System to build its own system were and continue to be without InteliClear's consent and contrary to the Amended License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

49.     ETC knew or had reason to know that its knowledge and use of InteliClear's trade secret derived from its use of the InteliClear System in a limited fashion under the Amended License Agreement that did not include the right to continue to operate or the right to copy or borrow the trade secret for use outside the scope of or after expiration or termination of the Amended License Agreement.

50.     ETC's misappropriation of InteliClear's trade secret was "improper," within the meaning of 18 U.S.C. § 1839(6), because ETC had no lawful right to acquire InteliClear's trade secret and to continue to operate the InteliClear System or to base its replacement system on or derive it from the InteliClear System, thus committing theft.  Moreover, ETC falsely certified and misrepresented to InteliClear on March 5, 2018 that it had discontinued all usage of the InteliClear System and that all derivative works based on the InteliClear System had been destroyed.

51.     ETC's misappropriation of InteliClear's trade secret was willful and malicious.

-13-

52.     As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

53.     Also as a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues equitable relief (a) enjoining ETC and all other persons who are in active concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, from using, continuing to use, selling, or attempting to sell the InteliClear System or any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, to destroy the InteliClear System in its possession and all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers.

## SECOND CLAIM FOR RELIEF

### (Misappropriation Under CUTSA Against All Defendants)

54.     InteliClear repeats and realleges Paragraphs 1 through 53 as if set forth fully herein.

55.     The InteliClear System is its "trade secret," within the meaning of the definition of that term in the Uniform Trade Secrets Act as adopted in California, Cal. Civil Code § 3426.1(d).

2146366

FIRST AMENDED COMPLAINT AND
JURY DEMAND

56.     After the February 28, 2018 effective termination date of the Amended License Agreement, ETC was not permitted to use the InteliClear System or any derivation of it.

57.     Nevertheless, in violation of Cal. Civil Code § 3426, ETC misappropriated InteliClear's trade secret by continuing to operate the InteliClear System and by using a derivation of the InteliClear System in ETC's replacement system after termination of the Amended License Agreement to track, compile, and report data concerning stock trades made by ETC Clearing and its customers throughout the United States and on stock exchanges across the country.

58.     ETC's continued operation of the InteliClear System and its use of the InteliClear System to build its own system were and continue to be without InteliClear's consent and contrary to the Amended License Agreement, and ETC used improper means to acquire knowledge of InteliClear's trade secret.

59.     InteliClear derives economic value from its trade secret because it is able to sell or license the InteliClear System to its customers.

60.     The trade secrets in the InteliClear System are not generally known by other persons or entities within the industry in which InteliClear sells and licenses the InteliClear System.

61.     InteliClear makes reasonable efforts to treat the InteliClear System as secret.

62.     ETC's misappropriation of InteliClear's trade secret was willful and malicious.

63.     As a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will be damaged in an amount in excess of millions of dollars.

64.     Also as a result of ETC's misappropriation of InteliClear's trade secret, InteliClear has been and will continue to be irreparably harmed unless the Court issues equitable relief (a) enjoining ETC and all other persons who are in active

concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, from using, continuing to use, selling, or attempting to sell the InteliClear System or any system or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, and (b) directing ETC and all other persons who are in active concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, to destroy the InteliClear System in its possession and all systems or other electronic media derived from, based on, or copied from the InteliClear System, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Against ETC Global)

65.     InteliClear repeats and realleges Paragraphs 1 through 64 as if set forth fully herein.

66.     The second Whereas clause of the Amended License Agreement stated that "ETC acknowledges that the SOFTWARE and all applications thereof is the exclusive, confidential, proprietary and copyrighted property of IC and as such constitutes IC's proprietary information."

67.     Under Section 1(j) of the Amended License Agreement, ETC Clearing and ETC Global agreed that "all information of any kind IC has supplied or provided to ETC in connection with the License including but not limited to the SOFTWARE, shall be exclusive, confidential, proprietary and copyrighted property of IC and as such constitutes IC's Proprietary Information (the "Proprietary Information")."  Section 1(j) of the Amended License Agreement further provided that "[d]uring and after the term of this Agreement, ETC . . . shall use the

Proprietary Information solely in connection with use and application of the License and for no other use without the prior consent of IC."  Section 1 of the Amended License Agreement provided that "[t]he license shall continue only during the term of this Agreement."

68.     Under the Amended License Agreement, "SOFTWARE" and InteliClear's "Proprietary Information" included the InteliClear System.

69.     After the February 28, 2018 effective termination date of the Amended License Agreement, ETC was prohibited under the terms of the Amended License Agreement from using the InteliClear System or any derivation of it for any purpose whatsoever.

70.     InteliClear did not consent to any use of the InteliClear System by ETC or its use of a system derived from the InteliClear System after the February 28, 2018 effective termination date.

71.     Nevertheless, after the February 28, 2018 effective termination date of the Amended License Agreement, ETC improperly continued to use, operate, and run the InteliClear System and to use a replacement system that was a derivation of the InteliClear System to track, compile, and report data concerning stock trades made for ETC Clearing's own account or on behalf of its customers throughout the United States and on stock exchanges across the country.

72.     ETC's continued use of the InteliClear System after the February 28, 2018 effective termination date of the Amended License Agreement and its use of the InteliClear System to build its own system were without InteliClear's consent and contrary to and prohibited by the Amended License Agreement.

73.     Furthermore, in its certification of March 5, 2018, ETC misrepresented to InteliClear that, among other things, ETC Global and its subsidiaries had discontinued all use of and destroyed all derivative works based on the InteliClear System.  The certification stated that "[t]his certification is made on behalf of ETC [Global] and its subsidiaries, effective March 1, 2018, based on and in reliance upon

the representations of Barnaby Hatchman, Chief Technology Officer of ETC Processing Technologies." The certification was signed by Harvey Cloyd, as Chief Executive Officer of and on behalf of ETC Global, and by Barnaby Hatchman, as Chief Technology Officer of and on behalf of ETC Processing.

74. By continuing after the February 28, 2018 effective termination date of the Amended License Agreement to use, operate, and run the InteliClear System and to use a replacement system that was a derivation of the InteliClear System, ETC Global breached the Amended License Agreement.

75. By allowing or enabling ETC Clearing, ETC Processing, or any other related entity after the February 28, 2018 effective termination date of the Amended License Agreement to use, operate, and run the InteliClear System and to use a replacement system that was a derivation of the InteliClear System, ETC Global breached the Amended License Agreement.

76. By falsely certifying that it had destroyed all copies of the InteliClear System and was no longer using the InteliClear System, ETC Global breached the Amended License Agreement.

77. As a result of ETC Global's breaches of the Amended License Agreement, InteliClear has been and will continue to be damaged in an amount in excess of millions of dollars.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Contract Against ETC Clearing and ETC Processing)**

78. InteliClear repeats and realleges Paragraphs 1 through 77 as if set forth fully herein.

79. Section 1(b) of the original License Agreement extended its rights and licenses to the benefit of ETC Clearing's affiliates, and Sections 1 and 3 of the Amendment to Software License Agreement extended its rights and licenses to the benefit of ETC Global's subsidiaries and affiliates.

80.     Up to and including the February 28, 2018 effective termination date of the Amended License Agreement, ETC Clearing and ETC Processing were subsidiaries and/or affiliates of ETC Global, and ETC Global and InteliClear intended ETC Clearing and ETC Processing to enjoy the benefits of and to be third-party beneficiaries of the Amended License Agreement.

81.     Up to and including the February 28, 2018 effective termination date of the Amended License Agreement, ETC Clearing and ETC Processing enjoyed the benefits of the Amended License Agreement by using, operating, and running the InteliClear System pursuant to the Amended License Agreement.

82.     By continuing after the February 28, 2018 effective termination date of the Amended License Agreement to use, operate, and run the InteliClear System and to use a replacement system that was a derivation of the InteliClear System, ETC Clearing and ETC Processing breached the Amended License Agreement.

83.     By falsely certifying that they had destroyed all copies of the InteliClear System and were no longer using the InteliClear System, ETC Clearing and ETC Processing breached the Amended License Agreement.

84.     As a result of ETC Clearing's and ETC Processing's breaches of the Amended License Agreement, InteliClear has been and will continue to be damaged in an amount in excess of millions of dollars.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff InteliClear, LLC prays for:

1.     Equitable relief, pursuant to 18 U.S.C. § 1836(b)(3), Cal. Civil Code § 3426.2, Rule 65 of the Federal Rules of Civil Procedure, and the Court's equitable powers, (a) enjoining ETC and all other persons who are in active concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, from using, continuing to use, selling, or attempting to sell the InteliClear System or any system or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and

settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, that is or are derived from, based on, or copied from InteliClear's electronic system for managing stock brokerage firm accounting, securities clearance, and securities settlement services, including the system previously licensed by InteliClear to ETC under the Software License Agreement effective January 1, 2008, as amended on or about September 12, 2012, (collectively, the "InteliClear System") and (b) directing ETC and all other persons who are in active concert or participation with ETC, including Apex Pro, Apex Clearing, Apex Clearing Holdings, and PEAK6, to destroy the InteliClear System in its possession and all systems or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, that are derived from, based on, or copied from the InteliClear System;

2.      An Order requiring ETC to file with the Court within thirty (30) days after issuance of any injunction in this action a report in writing under oath setting forth in detail the manner and form in which it has complied with the provisions of such injunction regarding the InteliClear System and all systems or other electronic media, including any computer accounting software programs for the recording, processing, clearing, and settling of securities transactions made for ETC Clearing's own account or on behalf of its customers, that are derived from, based on, or copied from the InteliClear System;

3.      Compensatory damages;

4.      Damages for unjust enrichment under 18 U.S.C. § 1836(b)(3)(B)(i)(II) and Cal. Civil Code § 3426.3(a);

5.      Restitution and disgorgement of all ill-gotten gains;

6.      Exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and Cal. Civil Code § 3426.3(c);

7.      Attorney's fees;

8.   Expert fees;

9.   Interest;

10.   Costs; and

11.   Such other and further relief as the Court deems just and proper.

DATED:  December 15, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

UPDIKE, KELLY & SPELLACY, P.C.

By:  /s/ *Richard S. Order*
　　　RICHARD S. ORDER
　　　Attorneys for Plaintiff
　　　INTELICLEAR, LLC

## **TRIAL BY JURY**

Plaintiff demands trial by jury on all claims and issues triable by a jury.

DATED:  December 15, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

UPDIKE, KELLY & SPELLACY, P.C.

By:  /s/ *Richard S. Order*
　　　RICHARD S. ORDER
　　　Attorneys for Plaintiff
　　　INTELICLEAR, LLC

2146366

-21-